UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| DAVID C. HEDGES, | ) ) ) | |
| Plaintiff, | ) ) | No. 5:20-CV-509-JMH-HAI |
| v. | ) ) ) | RECOMMENDED DISPOSITION |
| DEPUTY BACK, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

\*\*\*　\*\*\*　\*\*\*　\*\*\*

David C. Hedges, a pretrial detainee, brought this *pro se* action in December 2020, alleging improper treatment at the Montgomery County Regional Jail in Mount Sterling, Kentucky. D.E. 1. Upon initial screening, District Judge Hood dismissed several claims, but allowed other claims to proceed against three defendants. D.E. 9.

Hedges alleges improper treatment related to a period when he was subject to physical restraints. D.E. 1 at 2-3. He says he was removed from his cell "for having some self issues." Over the next four days, he was handcuffed at times, was tased at one point, spent much of his time in a restraint "wrap" or a restraint chair, and made a visit to the hospital. *Id*.; D.E. 20-1 at 2-10. Defendants claim this all happened after

> deputies at the Montgomery County Regional Jail became concerned about his well-being and consulted a mental healthcare provider, who recommended he be placed in restraints to prevent self-harm. Over the next several days, mental health and medical professionals regularly re-evaluated Hedges and determined the risk continued and restraint remained necessary. Jail staff complied, placing Hedges in restraints, observing him regularly, and providing him ample opportunities to stand up and walk, use the restroom, eat, and drink. Once Hedges' behavior stabilized and medical personnel determined restraints were no longer needed, he was released from them.

1

D.E. 20-1 at 1.

The Court entered a scheduling order on April 28, 2021. D.E. 17. On September 30, the dispositive-motions-briefing deadlines were extended. D.E. 19. Under that order, dispositive motions were due by October 15 and responses were due by November, 15, 2021.

On October 15, 2021, the defendants moved for summary judgment. D.E. 20. Hedges did not file a response by the November 15 deadline. The Court has provided ample time for the response to be mailed, and now recommends Defendants' unopposed motion be granted.

### I.  Hedges's Failure to Respond to the Government's Motion

When a party "fails to respond or to otherwise oppose a defendant's motion, then the district court may deem the plaintiff to have waived opposition to the motion." *Scott v. Tennessee*, 878 F.2d 382, 1989 WL 72470, at *2 (6th Cir. 1989) (unpublished table decision); *see also Humphrey v. U.S. Attorney General's Office*, 279 F. App'x 328, 331 (6th Cir. 2008) (finding that a plaintiff's failure to oppose arguments raised in the defendants' motion to dismiss is grounds for the district court to assume that opposition to the motion is waived). Joint Local Civil Rule 7.1(c) also provides that a failure to file a response in accordance with a court's scheduling order may be grounds for granting a motion for summary judgment.

Here, Hedges has filed no timely response nor a request for an extension of the November 15, 2021 deadline. The Court may therefore grant the government's motion based on the lack of response.

However, in granting a motion that will dispose of a claim, courts should make certain that a moving party has satisfied its burden under the Federal Rules. "[A] district court cannot grant summary judgment in favor of a movant simply because the adverse party has not responded. The court is required, at a minimum, to examine the movant's motion for summary

2

judgment to ensure that he has discharged that burden." *Carver v. Bunch*, 946 F.2d 451, 455 (6th Cir. 1991). The Court will therefore briefly address the merits of Hedges's claims.

## II. Summary Judgment and Qualified Immunity

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *See, e.g.*, *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). Parties moving for summary judgment are not required to put forth affirmative evidence to negate the existence of elements required by the non-moving party's claim. *Id.* at 324. It is sufficient for a moving party to merely state that there is an absence of evidence supporting the non-moving party's claim. *Id.* Once this is done, it then becomes the responsibility of the non-moving party to provide evidence which establishes an actual issue for trial. *See Employers Ins. Of Wausau v. Petroleum Specialties, Inc.*, 69 F.3d 98, 102 (6th Cir. 1995). The Court must grant summary judgment if the evidence would not support a jury verdict for the responding party with respect to at least one essential element of his claim. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251 (1986).

Jail officials can also be protected from suit by qualified immunity. Qualified immunity applies unless the plaintiff shows (1) a violation of a constitutional right and (2) that the right at issue was clearly established at the time of the defendant's alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions. When properly applied, it protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Hanson v. Madison Cty. Det. Ctr.*, 736 F. App'x 521, 529 (6th Cir. 2018) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)).

### III. Conditions of Confinement

Hedges frames his claims as "cruel and unusual punishment." D.E. 1 at 8. But he describes himself as a pretrial detainee. *Id.* at 1. Claims of unconstitutional conditions of confinement for pretrial detainees are analyzed under the Fourteenth Amendment's Due Process Clause rather than the Eighth Amendments' Punishments clause. But the analysis is the same. *Brawner v. Scott Cty., Tennessee*, 14 F.4th 585, 591 (6th Cir. 2021); *Stein v. Gunkel*, No. 2:19-CV-159-DLB-CJS, 2021 WL 5098685, at *2 n.2 (E.D. Ky. Nov. 2, 2021).

A claim of a pretrial detainee alleging improper conditions of confinement is analyzed under the same rubric as a deliberate indifference claim. *Stein v. Gunkel*, No. 2:19-CV-159-DLB-CJS, 2021 WL 5098685, at *5 (E.D. Ky. Nov. 2, 2021). Earlier this year, the Sixth Circuit adjusted the applicable standards in *Brawner v. Scott Cty., Tennessee*, 14 F.4th 585, 596 (6th Cir. 2021). However, the incidents underlying Hedges's claims occurred in November 2020. Prior to *Brawner*, the case of *Farmer v. Brennan*, 511 U.S. 825 (1994), stated the governing law. *See Stein*, 2021 WL 5098685, at *4-5. Here, the result is the same no matter which standard is applied.

> The *Brawner* standard focuses on the subjective aspect of the defendant's behavior:
>
> What then is required to establish deliberate indifference in this context? Mere negligence is insufficient. A defendant must have not only acted deliberately (not accidentally), but also recklessly in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known. . . . A pretrial detainee must prove more than negligence but less than subjective intent—something akin to reckless disregard. [In other words, t]he pretrial detainee must prove that the defendant-official acted [or failed to act] intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety.

4

*Brawner*, 14 F.4th at 596-97 (citations and quotation marks omitted); see also *Huntley v. Fuller*, No. 1:21-CV-350, 2021 WL 4621777, at *6 (W.D. Mich. Oct. 7, 2021).

Under the previous *Farmer* standard,

> to sustain a § 1983 claim on a theory of deliberate indifference, the plaintiff must meet both an objective and subjective component. [*Lamb v. Howe*, 677 F. App'x 204, 208 (6th Cir. 2017).] Under the objective component, the plaintiff must show that "the official was deliberately indifferent 'to a substantial risk of serious harm' to the inmate." [*Greene v. Bowles*, 361 F.3d 290, 294 (6th Cir. 2004).] To meet the subjective component, the plaintiff must demonstrate "that (1) 'the official being sued subjectively perceived facts from which to infer a substantial risk to the prisoner,' (2) the official 'did in fact draw the inference,' and (3) the official 'then disregarded that risk.'" [*Richko v. Wayne Cty., Mich.*, 819 F.3d 907, 915 (6th Cir. 2016).]

*Stein*, 2021 WL 5098685, at *5.

In this case, Defendants cite a number of cases that provide the contours of when a physical restraint can become unconstitutional. D.E. 20-1 at 13. Turing to the objective prong, they then argue:

> In this case, although Hedges was restrained for more than four days, he was under nearly constant supervision by deputy jailers and was regularly assessed by outside mental health professionals and medical staff at the jail. Moreover, the Defendants' role in Hedges' restraint must be assessed individually, *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010), and none of the Defendants conducted observations of Hedges for the entire time he was restrained. Rather, Deputy Back conducted observations of Hedges during a 12-hour period on November 21, 2020, and sporadically over the course of 8.5 hours on November 22, 2020; Deputy Conley made two isolated observations on November 21, 2020, and consistent observations over a 10-hour span on November 22, 2020; and Deputy Ducker observed Hedges for 3.5 hours on November 22, 2020. Each of the deputies permitted Hedges frequent opportunities to stand up out of the WRAP, use the restroom, eat, and drink. Although Hedges declined those offers in many instances, he accepted himself of them on numerous occasions. Hedges also does not claim his restraint caused him to urinate or defecate on himself such that the conditions were unsanitary. Thus, like in other cases in which an inmate's confinement was held not to violate his constitutional rights, Hedges' restraint in this case did not fall below the minimal standards of civilized society, and he therefore cannot satisfy the objective element of a Fourteenth Amendment conditions-of-confinement claim.

*Id*. at 14. These factual assertions are backed up by the affidavits, reports, and medical notes attached to the motion to dismiss.

As Rule 56(c) makes clear, to counter Defendants' assertion, Hedges must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other [such] materials." Fed. R. Civ. P. 56(c)(1)(a). Hedges, having not responded or presented evidence of his own, of course has cited to no such evidentiary materials. Thus, there is no issue of material fact. And the facts as presented by Defendants fail to establish deliberate indifference / unconstitutional conditions of confinement. On this record, Defendants' motion for summary judgment motion should be granted. Hedges has not met his burden of establishing a constitutional violation. And, in the alternative, Defendants are entitled to qualified immunity because they did not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

### IV. Excessive Force

Defendants, "out of an abundance of caution," also construe the complaint as alleging excessive force related to Hedges being tased and the use of restraints. D.E. 20-1 at 10.

"[A] pretrial detainee's excessive force claim brought under the Fourteenth Amendment's Due Process Clause is subject to the same objective standard as an excessive force claim brought under the Fourth Amendment." *Clay v. Emmi*, 797 F.3d 364, 369 (6th Cir. 2015). "The Supreme Court [has] held that a pretrial detainee's Fourteenth Amendment excessive force claim need only meet the objective component [of a conditions-of-confinement claim] by showing that 'the force purposely or knowingly used against him was objectively unreasonable.'" *Richmond*

6

*v. Huq*, 885 F.3d 928, 938 n.3 (6th Cir. 2018) (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015)).

> objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.
>
> Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force.

*Kingsley*, 576 U.S. at 397 (citations and quotation marks omitted). The "critical question" is whether the force used "was gratuitous." *Earnest v. Genesee Cty., Michigan*, 841 F. App'x 957, 961 (6th Cir. 2021).

Looking at the restraints used on Hedges, Defendants argue that the severity of the problem was significant. Hedges had threatened self-harm, and this risk had been affirmed by a mental health professional. Given this risk, Defendants argue the restraints, including the use of a taser, were proportional. As for injury, Hedges alleges his wrists were hurt by his handcuffing, leading to swollen and discolored hands. Defendants assert there is no medical evidence of these injuries in the record.[1] Hedges was also dehydrated when he was taken to the hospital, but the available evidence indicates he at times refused to take water he was offered. D.E. 20-1 at 17-20. Defendants conclude that "in light of the instructions from qualified healthcare professionals

---

[1] Deputy Back also testifies that when Hedges complained about the handcuffs, he checked them and either loosened them or found them not to be too tight. D.E. 20-7.

7

to institute high-risk protocols to prevent self-harm, the Defendants acted reasonably to both protect Hedges and mitigate the discomfort and inconvenience posed by the use of restraints." *Id*. at 20. The record before the Court bears out this assertion.

Turning to the use of the taser, Hedges alleges in his compliant that, after he spent twelve hours in the wrap, once taken out, he "refused to go back into the [w]rap and was tased." D.E. 1 at 2. "The taser prongs were ripped out of me, and I receive[d] no medical attention." *Id*. Defendants argue "Hedges was actively resisting officers' efforts to place him in restraints, which mental health professionals had determined was necessary for his own safety." D.E. 20-1 at 21. They argue the *Kingsley* factors are satisfied and compare this case to the similar facts in *Anderson v. Strode*, No. 18-6139, 2019 WL 5624508, at *1 (6th Cir. May 17, 2019), where a detainee was tased while trying to escape from a restraint chair. *Id*. Given the intense circumstances of this interaction, Deputy Back's taser deployment was not unreasonable.

On this claim, there is no issue of material fact. And the uncontested facts as presented by Defendants fail to establish excessive force in relation to the restraint or tasering. The Court agrees that no gratuitous force appears to have been used against Hedges, in either the tasering or the use of the wrap and handcuffs. On this record, Defendants' motion for summary judgment motion should be granted. Hedges has not met his burden of establishing a constitutional violation. And, in the alternative, Defendants are entitled to qualified immunity because they did not violate clearly established constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

## V. Conclusion

The undersigned **RECOMMENDS** that Defendants' unopposed motion for summary judgment (D.E. 20) be **GRANTED**. The Court directs the parties to 28 U.S.C. § 636(b)(1) and

Federal Rule of Civil Procedure 72(b) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. Within **fourteen days** after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, *de novo*, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Wandahsega*, 924 F.3d 868, 878 (6th Cir. 2019).

This the 10th day of December, 2021.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge